UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

Leave to File in
24-cv-0915 Granted

*Amy B Jack*

Amy Berman Jackson
April 8, 2024

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, ET AL.,

    Plaintiffs,

v.                                                          No. 4:24-cv-00213-P

CONSUMER FINANCIAL PROTECTION
BUREAU, ET AL.,

    Defendants.

## ORDER REOPENING CASE AND PROVIDING NOTICE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

In accordance with the order and instructions of the United States Fifth Circuit Court of Appeals, attached hereto as Exhibit A, the Court hereby **ORDERS** the Clerk of the Court to reopen this case. Further, the Court **ORDERS** the Clerk of the Court to provide a copy of this Order to the United States District Court for the District of Columbia in order to provide notice that the Court's "transfer was without jurisdiction and should be disregarded." *In re Fort Worth Chamber of Commerce*, No. 24-10266, Slip Op. at 2 (5th Cir. Apr. 5, 2024).

**SO ORDERED** on this **8th day** of **March 2024.**

*Mark T. Pittman*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

# EXHIBIT

# "A"

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

April 05, 2024

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

  No. 24-10266  In re: Chamber of Commerce
         USDC No. 4:24-CV-213

Enclosed is the opinion entered in the case captioned above.

        Sincerely,

        LYLE W. CAYCE, Clerk

        *Christina Rachal*

        By: _____
        Christina C. Rachal, Deputy Clerk
        504-310-7651

Ms. Jennifer B. Dickey
Ms. Stephanie Garlock
Ms. Karen S. Mitchell
Mr. Michael F. Murray
Mr. Justin Michael Sandberg
Mr. Philip Avery Vickers

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 5, 2024

No. 24-10266

Lyle W. Cayce
Clerk

IN RE FORT WORTH CHAMBER OF COMMERCE; LONGVIEW
CHAMBER OF COMMERCE; AMERICAN BANKERS ASSOCIATION;
CONSUMER BANKERS ASSOCIATION; TEXAS ASSOCIATION OF
BUSINESS; CHAMBER OF COMMERCE FOR THE UNITED STATES
OF AMERICA,

*Petitioners.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-213

Before HIGGINSON, WILLETT, and OLDHAM, *Circuit Judges.*
DON R. WILLETT, *Circuit Judge*:

A group of plaintiffs consisting of various business associations, including one located in Fort Worth, filed suit in the Northern District of Texas, challenging a new Final Rule issued by the Consumer Protection Financial Bureau (CFPB) regarding credit card late fees. The plaintiffs collectively sought a preliminary injunction against the Final Rule and requested expedited briefing and review in light of the Final Rule's imminent effect and the substantial compliance it entailed.

Rather than rule on the motion for preliminary injunction, however, the district court *sua sponte* considered whether venue was appropriate in the Northern District of Texas and invited CFPB to file a motion to transfer.

No. 24-10266

CFPB obliged, and the district court granted its motion in short order, transferring the case to the United States District Court for the District of Columbia.

The plaintiffs now petition for a writ of mandamus, arguing that the district court clearly abused its discretion by transferring the case while the plaintiffs' appeal was already pending here and, alternatively, lacked jurisdiction to transfer the case. Because the plaintiffs appealed the district court's effective denial of their preliminary-injunction motion before the district court granted the motion to transfer the case, we agree that the district court acted without jurisdiction.

Forum disputes are nothing new in American litigation. Opposing parties frequently bicker over where their litigation belongs. And district judges are right to scrutinize whether legal challenges in their courts actually belong there. Procedure matters—in big and small cases alike—and venue, admittedly, can be vexing. But this much is clear: Once a party properly appeals something a district court has done—here, the effective denial of a preliminary injunction—the district court has zero jurisdiction to do anything that alters the case's status. Importantly, we are not announcing today a broad rule regarding inter-circuit transfers. Indeed, we do not even reach the question of where this case rightly belongs. Our decision today is exceedingly narrow and procedural, focused not on the correctness of the district court's transfer order but rather on whether the court had jurisdiction to enter it. On these facts, it did not.

Accordingly, we GRANT the petition for mandamus, VACATE the district court's transfer order, and ORDER the district court to reopen the case because its post-appeal transfer order was void for want of jurisdiction and to give notice to D.D.C. that its transfer was without jurisdiction and should be disregarded.

No. 24-10266

I

The Credit Card Accountability and Disclosure Act directs CFPB to "establish standards for assessing whether" credit card late fees are "reasonable and proportional" to the violation. To that end, it authorizes CFPB to create a "safe harbor" fee amount presumed to be reasonable and proportional.[1] On March 5, 2024, CFPB enacted a Final Rule that decreases the previously applicable safe harbor amount for late fees charged by the nation's largest credit card issuers. The rule is set to take effect on May 14. To comply with the Final Rule, the credit card issuers must print and distribute disclosure materials about the late fees to customers. The current effective date means that customers must have received notice by March 29.

On March 7, the Chamber of Commerce[2] sued CFPB and moved for a preliminary injunction in the Northern District of Texas.[3] The Chamber requested a ruling "within 10 days, or as soon as possible thereafter, to prevent irrecoverable harm." The motion became ripe on March 14. Despite previously finding good cause to expedite briefing, however, the district court did not rule on the motion by within 10 days of its filing. Instead, it *sua sponte* requested briefing on venue on March 18 and "welcome[d]" CFPB to file a motion to transfer venue.

Having not received a ruling by the requested date, the Chamber moved for expedited review of its motion for a preliminary injunction on March 19. The Chamber informed the court that if it did not receive a ruling

---

[1] *See* 15 U.S.C. § 1665d(a)–(e).

[2] We refer to the group of plaintiffs as "the Chamber" for simplicity.

[3] The Chamber argues in its complaint that CFPB violated the Appropriations Clause, exceeded its statutory authority, offered a deficient analysis and reasoning, and adopted an effective date that violates another statute.

3

No. 24-10266

by March 22, it would understand its preliminary injunction to be effectively denied and would accordingly seek appellate review under 28 U.S.C. § 1292(a)(1). The district court denied the motion for expedited review on March 20. It did not rule on the motion for a preliminary injunction by March 22.

CFPB moved to transfer the case to the United States District Court for the District of Columbia (D.D.C.) on March 21. The motion became ripe on March 25. That same day, the Chamber appealed and filed an emergency motion for an injunction pending appeal and an administrative stay, arguing that the district court had effectively denied its motion for a preliminary injunction.[4]

On March 28, the district court granted the motion to transfer the case to D.D.C. The Chamber filed an emergency petition for mandamus and an administrative stay on March 29, requesting that we order "the district court to reopen the case because its transfer order was void for lack of jurisdiction and/or immediately request that the case be transferred back."

We administratively stayed the district court's transfer order pending our more considered view of the mandamus petition.

II

As a threshold matter, the Chamber and CFPB disagree about whether the district court had jurisdiction to transfer the case. Specifically, CFPB says the district court retained jurisdiction to transfer because the district court did not effectively deny the preliminary injunction, so there was no appealable order.

---

[4] That appeal is before our court under case number 24-10248.

4

No. 24-10266

To determine whether the district court had jurisdiction, we must first determine whether the district court effectively denied the preliminary injunction. An effective denial of a preliminary injunction is an appealable order.[5] If there is an appealable order, the appeal divests the district court of jurisdiction "over those aspects of the case on appeal."[6]

"A district court does not have the power to 'alter the status of the case as it rests before the Court of Appeals.'"[7] If the district court altered the status of the case, in frustration of our jurisdiction, when it transferred the case, then the district court didn't have jurisdiction to transfer the case. But if the district court did not alter the status by transferring the case, then it had jurisdiction, and we must consider whether the district court abused its discretion in ordering the transfer under 28 U.S.C. § 1404.[8]

---

[5] *Clarke v. CFTC*, 74 F.4th 627, 635 (5th Cir. 2023) ("[We] may review a district court's order that, while not explicitly denying a preliminary injunction, 'nonetheless ha[s] the practical effect of doing so' and might cause irreparable harm absent immediate appeal." (second alteration in original) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981))).

[6] *Alice L. v. Dusek*, 492 F.3d 563, 564–65 (5th Cir. 2007) (per curiam) ("A notice of appeal from an interlocutory order does not produce a complete divestiture of the district court's jurisdiction over the case; rather, it only divests the district court of jurisdiction over those aspects of the case on appeal. . . . How broadly a court defines the aspects of the case on appeal depends on the nature of the appeal.").

[7] *Dayton v. Indep. Sch. Dist. v. U.S. Min. Prod. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) (quoting *Coastal Corp. Tex. E. Corp.*, 869 F.2d 817, 820–21 (5th Cir. 1989)).

[8] This analysis entails applying four private-interest and four public-interest factors. "The private-interest factors are '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.' The public-interest factors are '(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in]

No. 24-10266

A

We begin by asking whether the district court effectively denied the Chamber's motion for a preliminary injunction. We conclude that it did.

When a district court denies a preliminary injunction, the denial is an appealable interlocutory order.[9] "[W]here an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction."[10] Because the district court did not expressly deny the motion here, we must determine whether the district court's inaction, in light of the unique expedited nature of the case, amounts to an "effective" denial.

It's generally understood that a motion for preliminary injunctive relief "must be granted *promptly* to be effective," so if a district court does not timely rule on a preliminary-injunction motion, it can effectively deny the motion.[11] We have accordingly recognized that simply sitting on a preliminary-injunction motion for too long can effectively deny it.[12]

CFPB argues that the district court's delay is too short to constitute an effective denial because only *one* month has passed since the motion for a preliminary injunction was filed. According to CFPB, the timeline of this

---

the application of foreign law.'" *In re Clarke*, 94 F.4th 502, 509 (5th Cir. 2024) (first quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); then quoting *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023)).

[9] *See* 28 U.S.C. § 1292(a)(1).

[10] *Abbott v. Perez*, 585 U.S. 579, 594 (2018).

[11] 16 CHARLES ALLEN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 3924.1 (3d ed.) (emphasis added).

[12] *See, e.g.*, *Clarke*, 74 F.4th at 635 (three months); *McCoy v. La. State Bd. of Educ.*, 332 F.2d 915, 916–17 (5th Cir. 1964) (four months); *United States v. Lynd*, 301 F.2d 818, 820 (5th Cir. 1962) (eight months).

No. 24-10266

case is far shorter than the other cases in which we recognized an effective denial.[13] Without context, CFPB is right. But its argument fails to account for the expedited nature of this case. Among the considerations when determining whether a district court has waited too long to rule on a motion is "the urgency of preliminary relief as a means of preserving the opportunity for *effective* permanent relief."[14] Thus, whether a district court fails to act promptly depends entirely on context.

The context of this case reveals that the district court did not act promptly with regard to the Chamber's motion for a preliminary injunction. When CFPB enacted the Final Rule on March 5 and set an effective date of May 14, it created a short runway for issuers to comply or seek preliminary injunctive relief. To comply with the Final Rule, credit card issuers needed to have printed and distributed disclosure materials about the late fees to customers by March 29. The Chamber attests that providing notice "typically takes 4 months"—not weeks.

For its part, the Chamber acted diligently. It filed this action challenging the Final Rule within two days of CFPB issuing the new rule. It argues in its complaint that CFPB implemented its new rule in violation of a statute that requires it to give *6 months* for issuers to comply. With its initial filing, the Chamber specifically requested a ruling on its preliminary injunction within 10 days so that the credit card issuers could avoid rushing to comply with a rule that they thought was invalid. It also requested expedited briefing. The district court found good cause to expedite the briefing schedule.

---

[13] *See supra* note 12.

[14] WRIGHT & MILLER, *supra* note 11, § 3924.1 (emphasis added).

7

No. 24-10266

When the motion for a preliminary injunction became ripe on March 14, the district court did not rule on it but instead *sua sponte* invited briefing on venue on March 18. The Chamber responded to not having received a ruling by its requested date by moving for expedited review of the motion for a preliminary injunction on March 19—it argued that if it didn't receive a ruling by March 22, the preliminary injunction would be effectively denied because the credit card issuers had to provide notice to customers by March 29. The district court quickly denied the motion for expedited review on March 20. And, as promised, the Chamber appealed, arguing effective denial.

CFPB filed a motion to transfer that became ripe on March 25, and the district court chose to give its attention to *that* motion, ultimately granting it three days later on March 28.

The Chamber made clear from its first filing that the Final Rule was going into effect on an unusually short timeline, which meant the credit card issuers had an unusually short window of time to comply. Accordingly, the Chamber repeatedly requested swift review. Given the Chamber's diligence in seeking to expedite briefing and consideration, and its repeated requests for a ruling by specific dates so as to avoid substantial compliance with the new rule, the district court effectively denied the motion by failing to rule on it by those dates and *sua sponte* inviting briefing on venue/transfer.[15]

Of course, we recognize that plaintiffs cannot simply say they need an expedited ruling and then appeal by claiming effective denial when they don't get it on their preferred timeline. "Appeal cannot be achieved simply by asserting that the trial court has failed to act as promptly as wished by a party

---

[15] *Cf. Comput. Care v. Serv. Sys. Ent., Inc.*, 982 F.2d 1063, 1075 (7th Cir. 1992) ("[F]ailure to grant such relief *when it was sought* . . . has the substantive effect of a denial." (emphasis added)).

No. 24-10266

seeking an injunction."[16] There must be a legitimate basis for the urgency. CFPB does not contradict the Chamber's summary of the timeline or what the Final Rule requires credit card issuers to do by the effective date. It only counters that the issuers' compliance costs, which the Chamber says are substantial, are in fact negligible. On this limited record, however, the Chamber has made the case that its urgency is justified.

In sum, given the issuers' unusually short timeline for complying with the Final Rule or obtaining injunctive relief, the district court effectively denied the Chamber's motion for a preliminary injunction by not promptly ruling on it by and by instead opting to hear an unrelated motion *sua sponte*.

We emphasize that what counts as an effective denial is contextual—different cases require rulings on different timetables. District courts have wide discretion in managing their docket, and they do not necessarily deny a motion by failing to rule on a parties' requested timeline. Even so, in this case, the Final Rule's fast-closing window for compliance demanded faster review of the motion for a preliminary injunction.

Because the district court effectively denied the preliminary injunction, there is an appealable order before us.[17]

B

Next, we ask whether the Chamber's appeal of the district court's effective denial divested the district court of jurisdiction to transfer the case.

---

[16] WRIGHT & MILLER, *supra* note 11, § 3924.1.

[17] *Clarke*, 74 F.4th at 635.

No. 24-10266

A notice of appeal from an appealable order divests the district court of jurisdiction over aspects of the case on appeal.[18] "The filing of a timely and sufficient notice of appeal transfers jurisdiction over matters involved in the appeal from the district court to the court of appeals. The district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal."[19] "How broadly a court defines the aspects of the case on appeal depends on the nature of the appeal."[20] But it is clear that "[a] district court does not have the power to alter the status of the case as it rests before the Court of Appeals."[21] To determine whether the district court had jurisdiction to transfer the case, we must define the scope of "the aspects of the case on appeal."[22]

The Chamber argues that jurisdiction to transfer the case implicates "the aspects of the case involved on appeal" because a transfer would frustrate our ability to provide meaningful relief because we would have no case to review. We agree.

In support of this argument, the Chamber points to two other contexts—qualified immunity and arbitration. In the qualified-immunity context, the district court loses authority to order discovery because the point of appealing a qualified-immunity denial is in part to avoid the burden of discovery. And in the arbitration context, the district court lacks authority to proceed because the point of appealing the denial of a motion to compel

---

[18] *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc), *superseded by statute on other grounds*; *see also Rutherford v. Harris County*, 197 F.3d 173, 190 n.17 (5th Cir. 1999).

[19] *Hitchmon*, 602 F.2d at 692.

[20] *Dusek.*, 492 F.3d at 565.

[21] *Dayton*, 906 F.2d at 1064 (quoting *Coastal Corp.*, 820–21).

[22] *Dusek*, 492 F.3d at 564.

No. 24-10266

arbitration is to vindicate a clause that prohibits court proceedings at all. **Pet. at 12–15.** Transferring a case to another district while the appeal of an effective denial is pending would essentially nullify the appeal and render us unable to grant relief. It would thus "alter the status of the case as it rests before the Court of Appeals."[23]

CFPB counters that the Chamber's cited cases support only that district courts are divested from taking actions that would eliminate all avenues for relief, and the Chamber can still get relief from the transferee court. But this doesn't account for the unusually short timeline in this case. Once a transfer occurred, the Chamber certainly could not obtain relief by their requested dates for a ruling and in time to avoid substantial compliance with the new rule. Delaying review here undercut the Chamber's chance for any meaningful review.

In sum, by transferring the case while an appealable order was pending before our court, the district court "alter[ed] the status of the case as it rests before the Court of Appeals."[24] Thus, the district court lacked jurisdiction to transfer the case.

### III

We've so far concluded that the district court (1) effectively denied the preliminary injunction, and (2) lacked jurisdiction to transfer the case. We must still ask whether mandamus is appropriate.

---

[23] *Dayton*, 906 F.2d at 1064 (quoting *Coastal Corp.*, 869 F.2d at 820–21); *see also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Wooten v. Roach*, 964 F.3d 395, 403 (5th Cir. 2020).

[24] *Dayton*, 906 F.2d at 1064 (quoting *Coastal Corp.*, 869 F.2d at 820–21).

No. 24-10266

A petitioner must satisfy three requirements for a writ of mandamus:

(1) "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process"; (2) "the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable"; and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.[25]

"[T]his circuit has established that the first 'mandamus requirement is satisfied in the motion-to-transfer context.'"[26] Cases with "an out-of-circuit transfer only strengthens the case for mandamus."[27] Thus, we focus on the second and third requirements.

The second requirement is met because the district court lacked jurisdiction to transfer the case while an appealable order was pending before our court. This was clear and indisputable error.

That leaves the third requirement. "[W]rits of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case."[28] Facing an uptick in inter-circuit transfer orders, we take this opportunity to clarify that once an

---

[25] *In re Volkswagen of Am., Inc.*, 545 F.3d at 311 (first alteration in original) (quoting *Cheney v. U.S. Dist. Ct. for D. C.*, 542 U.S. 367, 380–81 (2004)).

[26] *In re TikTok*, 85 F.4th at 358 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013) (per curiam)).

[27] *In re Space Expl. Techs., Corp.*, No. 24-40103, 2024 WL 948321, *2 (5th Cir. Mar. 5, 2024) (Elrod, J., dissenting).

[28] *In re Volkswagen*, 545 F.3d at 319.

No. 24-10266

appealable order is lodged before our court, district courts lack jurisdiction to
transfer a case because it stymies our ability to review.

All three requirements for mandamus are met. Accordingly, issuance
of the writ is appropriate.

\*     \*     \*

Because the Chamber had a short window of time to either (1) comply
with the Final Rule, or (2) seek a preliminary injunction, the district court's
inaction amounted to an effective denial of the Chamber's motion for a
preliminary injunction. That effective denial is properly before us on appeal.
The district court lacked jurisdiction to transfer the case after this appeal was
docketed because doing so would alter its status.

IT IS ORDERED that the administrative stay of the transfer order
previously extended by this panel on April 2, 2024, is DISSOLVED.

The district court's transfer order is VACATED.

The petition for a writ of mandamus is GRANTED. The district
court is ORDERED to reopen the case and to give notice to D.D.C. that its
transfer was without jurisdiction and should be disregarded.

No. 24-10266

ANDREW S. OLDHAM, *Circuit Judge*, concurring:

I join Judge Willett's opinion in full. Under the "one-court-at-a-time rule," a notice of appeal generally transfers the case to us until we send it back to the district court. *See, e.g.*, *United States v. Willis*, 76 F.4th 467, 471 (5th Cir. 2023); *United States v. Lucero*, 755 F. App'x 384, 386 (5th Cir. 2018) (per curiam). While there are exceptions to that rule, *see Willis*, 76 F.4th at 471–73, none applies here.

I write separately to explore additional problems with the district court's order to transfer this case under 28 U.S.C. § 1404(a).

I.

With greatest respect for our district court colleague, the transfer order erroneously construed (A) the § 1404(a) standard and (B) our precedent. So even if the one-court-at-a-time rule did not apply, (C) we would have grounds to grant mandamus.

A.

Start with § 1404(a). It enables district courts to transfer certain cases "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Importantly, the burden is on the moving party to "clearly establish good cause" for the transfer. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). It is not enough that the movant's chosen alternative venue is "more likely than not to be more convenient." *See ibid.* Rather, the chosen venue needs to be "clearly more convenient." *See In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *see also In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) ("[A] movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the

14

No. 24-10266

transferee venue.") (emphasis in original). Among other things, this burden reflects the longstanding deference that courts show towards the plaintiff's choice of venue. *See, e.g.*, *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013) ("The Court must...give some weight to the plaintiffs' choice of forum."); *Clarke*, 94 F.4th at 515–16 (noting that the plaintiff is "master of the complaint"); *see also Def. Distributed*, 30 F.4th at 433 (providing that the plaintiff's choice of venue should be respected); *Volkswagen II*, 545 F.3d at 315 (same).

The district court's order appeared to recognize these requirements. But I am concerned that the district court lightened the § 1404(a) burden in two ways.

First, the district court held that a plaintiff's choice of venue is accorded less respect "where the plaintiff brings suit outside his home forum." District Court Op. at 2 (quotation omitted). As only one of the six plaintiffs was based in the Northern District, this rule statement appears to have influenced the remainder of the district court's analysis. *See, e.g., id.* at 3, 5. But I am unaware of any support in our precedent or the Supreme Court's for this less-respect rule. [1] To the contrary, we have never put a geographic caveat on our repeated statements about the plaintiff's choice of venue. *See, e.g., Clarke*, 94 F.4th at 515–16; *Def. Distributed*, 30 F.4th at 433; *Volkswagen II*, 545 F.3d at 315. Moreover, this assertion conflicts with the relevant venue statute regarding suits against federal officers. *See* 28 U.S.C. § 1391(e). In that statute, Congress provided three paths to establish venue, including, *but expressly not limited to*, the residence of the plaintiff. *See* 28 U.S.C. § 1391(e)(1)(C); *see also id.* § 1391(e)(1)(A) (providing venue in any

---

[1] Query whether, where at least one of the plaintiffs did bring suit in its home forum, the residence of the other five plaintiffs should matter in any event.

No. 24-10266

district "in which...a defendant in the action resides"); *id.* § 1391(e)(1)(B) (providing venue in any district "in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"). Because Congress gave no textual priority to one of these three avenues, we cannot give preference to suits brought in the plaintiff's home forum.

Second, the district court appeared to analyze the motion to transfer with an eye towards discouraging forum and / or judge-shopping. *See* District Court Op. at 5–7. However well-intentioned this approach may have been, I cannot find support for it in Supreme Court or Fifth Circuit precedent. True, Congress added the qualification "substantial" to § 1391(e)(1)(B). *Cf.* District Court Op. at 5; *see also id.* at 6 (recommending that plaintiffs bring cases "in jurisdictions where the impact is *uniquely* and *particularly* felt," notwithstanding the fact that those words do not appear in the relevant federal venue statute). But that only highlights that Congress did not require "substantiality" in § 1391(e)(1)(A) and (C). It is not for federal district courts to add additional qualifications on top of statutory law, especially where the Supreme Court has previously declined to impose judicial barriers to forum-shopping.[2] *See, e.g., Ferens v. John Deere Co.*, 494 U.S. 516, 527–29 (1990).

B.

Next, consider our court's § 1404(a) precedents. In determining whether the movant has clearly established good cause for the transfer, *see*

---

[2] The district court noted that "[v]enue is not a continental breakfast; you cannot pick and choose on a Plaintiffs' whim where and how a lawsuit is filed." District Court Op. at 5. But so long as the plaintiffs complied with federal law, any complaint about the scope of venue statutes is better addressed to Congress.

No. 24-10266

*Def. Distributed*, 30 F.4th at 433, courts must consider eight factors (four private-interest and four public-interest):

> The private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public-interest factors are "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Clarke*, 94 F.4th at 509 (citations omitted).[3] No factor is "dispositive," and this court has cautioned against a "raw counting of the factors that weighs each the same." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quotation omitted).

The district court found that factors (4), (5), and (6) weighed in favor of transfer to the D.D.C. *See* District Court Op. at 4–6. But there are significant problems with the district court's analysis of all three.

Begin with factor (4): "practical problems that make trial of a case easy, expeditious and inexpensive." *Clarke*, 94 F.4th at 509. The district court emphasized that most of the attorneys were from D.C. *See* District Court Op. at 4. Accordingly, the attorneys' travel costs would mean "an expensive bill" charged either to the plaintiffs or the taxpayers. *Ibid.* Even if

---

[3] These factors are drawn in large part from our en banc decision in *Volkswagen II*. But that case involved an *intra*-circuit transfer from one Texas district court to another. *See* 545 F.3d at 307. Query whether a higher burden should be met in advocating a § 1404(a) transfer from a district court in one circuit to a district court in another circuit more than 1,000 miles away.

No. 24-10266

true, this does not weigh this factor in favor of transfer. As to the plaintiffs'
costs, it bears repeating that the plaintiffs are the "master[s] of the
complaint." *See Clarke*, 94 F.4th at 515–16. That characterization would
mean very little if the travel costs of the plaintiffs' lawyers could be used to
oppose the plaintiffs' *own* choice of venue.

As to the federal government's lawyers, two points bear emphasis.
First, "[w]hen a defendant is haled into court, some inconvenience is
expected and acceptable." *Def. Distributed*, 30 F.4th at 433. Travel costs are
an assumed part of that inconvenience. *Cf. In re Horseshoe Entertainment*, 337
F.3d 429, 434 (5th Cir. 2003) (per curiam) (rejecting a district court's
consideration of the location of counsel in the § 1404(a) analysis). Second, it
is no surprise that defendants' lawyers are from D.C.—defendants are a
federal agency and a federal officer. But if their travel costs are to weigh
against out-of-D.C. venues, federal defendants could *always* argue that
litigation should be transferred to the D.D.C.[4] Such an outcome would
concentrate federal judicial power in D.C. and undermine our federalist
system. Correctly applied, this factor is neutral as to a transfer from the
Northern District of Texas to the District of Columbia.

Next, consider factor (5): "the administrative difficulties flowing from
court congestion." *Clarke*, 94 F.4th at 509. The district court found this
factor weighed "heavily" in favor of transfer. *See* District Court Op. at 4–5.

---

[4] In their opposition to the petition for writ of mandamus, defendants deny the
consequences of the district court's rationale. *See* Opposition at 29 ("Many APA cases are
litigated outside Washington, D.C.—including in this Circuit—and appropriately so."").
But defendants give no indication how the reasoning in the transfer order could not be used
by federal defendants to always support transfers to the D.D.C. on account of government
counsel's convenience and expense. Must plaintiffs challenging government action always
use non-D.C. attorneys so as to oppose this argument? Such an anti-plaintiff work-around
cannot possibly be required by § 1404(a)'s text or this court's precedents.

No. 24-10266

In doing so, it relied on evidence suggesting the median time for disposition of a case in the D.D.C. is 1.4 months quicker than that in the Northern District of Texas. *See ibid.* (citation omitted). We certainly defer to the able district court's assessment of its own docket, but it's an altogether different proposition to defer to a district court's "guess" about the congested nature of *other* district dockets. *See Clarke*, 94 F.4th at 515. If this factor weighs in favor of transfer, it does so only slightly.

Finally, consider factor (6): "the local interest in having localized interests decided at home." *Id.* at 509. The district court concluded that there was a "strong interest" in having this case decided in D.C. *See* District Court Op. at 5. But in doing so, the court emphasized the location of the parties and their attorneys. *See id.* at 6 ("The Rule at issue in this case was promulgated in Washington D.C., by government agencies stationed in Washington D.C., and by employees who work in Washington D.C. Most of the Plaintiffs in this case are also based in Washington D.C. and eighty percent of the attorneys in this matter work in Washington D.C."). With deepest respect for our learned colleague, this conflicts with our recent decision in *Clarke*, which held that "the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case." 94 F.4th at 511 (emphasis in original); *see also id.* (critiquing a district court for only considering the "relationship between the venue and the party").

Properly understood, local interests do not weigh in favor of transfer and plausibly weigh against transfer. Plaintiffs have alleged that many of the non-party citizens that will be affected by the challenged CFPB Rule live in Texas, including in the Northern District. *See* Plaintiffs' Supplemental Motion on Venue and Response to Defendants' Motion to Transfer Venue at 13. And as relevant to the "relative" nature of the transfer analysis, *cf. Clarke*, 94 F.4th at 512, many more potentially affected non-party citizens are in Texas than in the District of Columbia. *See* Plaintiffs' Supplemental

No. 24-10266

Motion on Venue and Response to Defendants' Motion to Transfer Venue
at 13. A proper focus on non-party citizens instead of parties would place the
local interests factor as weighing against transfer not in favor of it.

## C.

Lastly, the mandamus inquiry. *Clarke* succinctly laid out the three
requirements for writ of mandamus:

> First, "there must be 'no other adequate means to attain the
> relief . . . desire[d].'" Second, "the right to issuance of the writ
> must be clear and indisputable." Third, "the issuing court, in
> the exercise of its discretion, must be satisfied that the writ is
> appropriate under the circumstances."

94 F.4th at 516 (citations omitted). All three requirements are met here.

First, mandamus is permitted where plaintiffs have no other means of
achieving redress for the district court's erroneous transfer order. *See ibid.*;
*see also In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013).

Second, the right to mandamus is clear and indisputable based on the
district court's erroneous analysis of the § 1404(a) factors. *Clarke* is
instructive. In that case, we found a clear abuse of discretion where the only
factor that weighed in favor of transfer, congestion, was opposed by another
factor that weighed against transfer. *See id.* at 509–16. Here, the only factor
that weighs in favor of transfer, congestion, is opposed by another factor that
plausibly weighs against transfer, local interests. While we do not replace the
district court's exercise of discretion with our own, *see Volkswagen II*, 545
F.3d at 312, the parallels between *Clarke* and this case cannot be ignored. And
we are obviously bound to follow *Clarke*.

Third, as we recognized in *Clarke* and prior cases, mandamus is
"particularly appropriate" for reviewing district court transfer decisions. *See
Clarke*, 94 F.4th at 516 (quotation omitted); *see also TikTok*, 85 F.4th at 367

No. 24-10266

(holding that mandamus is an appropriate exercise of our supervisory discretion where transfer decisions are rarely reviewed and district courts continue to inconsistently administer § 1404(a) transfers). Here, mandamus would be appropriate for many reasons, not least of which is to clarify to this district court and others that forum-shopping, whether in or out of one's home forum, cannot weigh in favor of § 1404(a) transfer.

## II.

This case again highlights why a district court should stay a transfer order for a short period so that opposing parties may appeal it. We commended that procedure in *Clarke*, 94 F.4th at 507 n.1. And that procedure would have avoided the very unfortunate circumstance presented by this motion: we've been forced to consider a mandamus application on a highly truncated timeline and to grant relief that could've otherwise been avoided.

I have zero doubt about the conscientiousness of the learned district court judge. The district court's forum-shopping concerns might be well-founded. And I certainly don't think the district court "defied" anyone or anything. *Post*, at 3 (Higginson, J., dissenting). But I do think the preexisting transfer rules precluded sending this case to Washington, D.C. That result is dictated by *Clarke* and the ample authorities underlying that decision—not some "new proposition of law created by [today's] majority." *Post*, at 5 (Higginson, J., dissenting).

21

No. 24-10266

STEPHEN A. HIGGINSON, *Circuit Judge*, dissenting:

I would deny the mandamus petition.

## I.

The district court's reasoned conclusion that the case "does not belong in the Northern District of Texas" is fact-based and sound. *Chamber of Com. v. CFPB*, No. 4:24-CV-00213-P, 2024 WL 1329959, at *4 (N.D. Tex. Mar. 28, 2024). As it notes, the CFPB and "[m]ost of the Plaintiffs in this case are also based in Washington D.C."—not to mention that all the events are tied to Washington, D.C.: The CFPB Rule in question "was promulgated in Washington D.C., by government agencies stationed in Washington D.C., and by employees who work in Washington D.C." *Id.* at *3. Conversely, the case has no real, let alone "substantial," connection to the Northern District of Texas. 28 U.S.C. § 1391(e)(1). As the district court explained, "[t]he only apparent connection" is that: (1) "one Plaintiff"—*not* a card issuer affected by the Late Fee Final Rule, but the Fort Worth Chamber of Commerce, asserting associational standing for an *out-of-state* bank that claims membership—is headquartered in the Northern District of Texas, and (2) "the effects of the Rule will be felt generally here." *Chamber of Com.*, 2024 WL 1329959, at *4.

All parties agree venue is proper in Washington, D.C., where the case has already been docketed. *See Chamber of Com. v. CFPB*, No. 1:24-cv-00915-ABJ (D.D.C. Mar. 29, 2024), ECF No. 68.

The district court also correctly emphasized that there is no indication the matter would not get a full, fair, and expeditious resolution in the District Court for the District of Columbia. And Petitioners' assertion, embraced by the majority, of a March 29 deadline to provide notice to customers ignores what the challenged Rule actually requires.

No. 24-10266

I would therefore hold that the stark concentration of parties and events in Washington, D.C. readily supports the district court's determination that practical considerations, along with the congestion and local-interest factors, justify transfer.

## II.

Importantly, I also see no abuse of discretion that would warrant mandamus. Judge Pittman's analysis of the *Gilbert* factors and his fact-specific determinations, all made in response to Petitioners' urgent presentation of this case, make transfer here a determination soundly within his discretion, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" (citation omitted)), and certainly not "patently erroneous," *id.* at 312; *see id.* ("But—and we stress—in no case will we replace a district court's exercise of discretion with our own; we review only for clear abuses of discretion that produce patently erroneous results.").

Notably, this is *not* a case where the district court "fail[ed] to rule on the preliminary injunction for three months," *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024); *not* a case where the district court made a relative determination regarding the local-interest factor based "*solely*" on the parties' "connection[s] to the venue" rather than the "events that gave rise to the suit," *id.* at 511 & n.12 (citation omitted); and *not* one where it provided "all of two sentences" to discuss all four private-interest factors, *id.* at 513.

Indeed, the district court's prompt transfer of the case, after explaining in detail why the case was improperly before it, dutifully heeds our admonishments to district courts to prioritize ruling on motions to transfer. *See, e.g., In re TikTok, Inc.*, 85 F.4th 352, 362 (5th Cir. 2023); *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). By granting mandamus, the majority

No. 24-10266

reverses course today.[1] *Contra State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) (finding that an order granting a motion to transfer a case did *not* constitute an effective denial of a pending motion for a preliminary injunction).

Worse still, the majority's grant of mandamus also threatens to impossibly hamstring district courts by effectively declaring that our district judges cannot manage their dockets to sequence threshold questions before difficult merits questions and cannot transfer cases if there are motions pending. Instead, district courts will be deemed to have "decided" merits questions—and will be subject to appellate review—when they simply do not accede to a plaintiff's insistence for a ruling *in less than two weeks* from assignment of the case. I have never been a trial judge, but this strikes me as impossible law for us to impose, much less declare as clear and obvious existing law defied by Judge Pittman.

The majority concludes there was an effective denial of the preliminary injunction because of the "unusually short timeline for complying." Maj. at 9; *see id.* ("There must be a legitimate basis for the urgency. CFPB does not contradict the Chamber's summary of the timeline or what the Final Rule requires credit card issuers to do by the effective date."). This conclusion, however, rests on a factually flawed premise. As the CFPB has explained, issuers are *not* required to give advance notice if they *reduce* a late fee—which is the *only* change that the Late Fee Rule requires. *See* 12 C.F.R. § 1026.9(c)(2)(v)(A); *see also id.* § 1026.6(b)(3). Any specter of a March deadline for compliance with the Rule—the alleged

---

[1] The absence of *any* authority establishing requirements for threshold determinations a district court must make prior to effectuating what it in good faith believes is a valid transfer—including ruling on pending motions—underscores the impropriety of mandamus in this case.

No. 24-10266

"legitimate basis for the urgency"—was, therefore, a fiction.[2] And in the absence of an *actual* deadline, the mere two weeks the district court had with this complex preliminary injunction request[3]—indeed, premised heavily on a case pending before the Supreme Court—cannot have constituted an effective denial. Nothing in our case law comes remotely close to establishing that proposition. Indeed, even this petition for mandamus has been pending before us for a week. *See* Petition, *In re Chamber of Com.*, No. 24-10266 (March 29, 2024), ECF No. 5.

Gutting in this manner a district judge's discretion to expeditiously transfer a case it has good reason to believe is improperly before it— especially when *Petitioners* have *insisted* that time is of the essence—is particularly worrisome not just as *our* usurpation of district courts' docket control, but also in its implications for the judiciary's ability to prevent forum shopping. *Cf.* Judicial Conference Committee on Court Administration and Case Management, *Guidance for Civil Case Assignment in District Courts* (Mar. 2024). It was apparent to Judge Pittman that under Petitioners' "theory, there isn't a city in the country where venue would not lie, as every city has customers who may potentially be impacted by the Rule." *Chamber of Com.*, 2024 WL 1329959, at *3. In full view of Petitioners' actions, the district court then saw fit to include the following admonition which our decision today repudiates: "Venue is not a continental breakfast; you cannot pick and choose on a Plaintiff's whim where and how a lawsuit is filed.

---

[2] To the extent that Petitioners argue issuers need to make *other* changes to counteract the effects of the Rule, the timing of those changes is entirely elective, and entirely untethered to the Rule's effective date. Any urgency stemming from issuers' desire to effect other changes *not required* under the CFPB's rule would, therefore, be merely an urgency of their own design.

[3] Petitioners themselves chose to move for a preliminary injunction, not a temporary restraining order.

No. 24-10266

Indeed, this is why § 1391(e)(1)(B) has the 'substantial' qualification as one of the factors in deciding venue." *Id.* I fear that in granting mandamus to vacate a well-reasoned and fact-based transfer order, so too is vacated any intelligible limiting principle constraining "[p]laintiffs' whim[s]."

## III.

For the foregoing reasons, I believe that the new proposition of law created by the majority is incompatible with district court discretion over docket management and prudent policing of forum shopping.[4]

Finally, I am confident the District Court for the District of Columbia will give the suggestion that it should disregard a case docketed by it its closest attention.

---

[4] *See* Order at 2, *Chamber of Com. v. CFPB*, No. 4:24-CV-00213-P (N.D. Tex. March 20, 2024), ECF No. 51 ("[T]he Court does not have the luxury to give increased attention to certain cases just because a party to the case thinks their case is more important than the rest. There are simply too many cases that demand the Court's full attention."); *cf. June Med. Servs., L.L.C. v. Phillips*, No. 22-30425, 2022 WL 4360593, at *1 (5th Cir. Sept. 28, 2022) (construing district court's denial of expedited relief but explicit deferral of merits determination as "an administrative decision by the district court to manage its docket" (citation omitted)).

26